# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **SHERMAN LOONEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 2:06-CV-2066-VEH** |
| ) | |
| **JRP HOSPITALITY CORP, and** ) | |
| **DHARMESH PATEL,** ) | |
| ) | |
| **Defendants.** ) | |

---

## <u>MEMORANDUM OPINION</u>

Before the court is the motion of the Defendants, JRP Hospitality Corp. and

Dharmesh Patel ("Defendants"), for summary judgment on the claims of the Plaintiff,

Sherman Looney ("Looney"), filed on August 1, 2007.  (doc. 12).  For the reasons

explained, the motion is due to be **GRANTED in part** and **DENIED in part** as set

out herein.

## I.   FACTUAL HISTORY[1]

---

[1]  These are the facts for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as "facts" in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts'") (citation omitted).  Facts are undisputed unless otherwise noted.  Where the facts are in dispute, they are stated in the manner most favorable to the plaintiff.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

Sherman Looney is a real estate broker who lived in Selma, Alabama during all times relevant to this action. (Looney Aff. pg. 1). He has been confined to a wheelchair for forty-four years following an injury to his spine that left him paralyzed from the chest down. (*Id.*; Looney Dep. pg. 52). Looney has limited use of his arms and hands and limited control of certain bodily functions, including bowel movements. (Looney Aff. pg. 1). He requires the assistance of a personal attendant for "all activities." (*Id.*).

On the afternoon of April 7, 2005, Looney was traveling by car from Selma to Birmingham for a doctor appointment, where he sought treatment for a pressure sore that had developed on his buttocks. (*Id.*). The car was driven by Looney's personal attendant, William Cosby ("Cosby"). (*Id.*).

After stopping for lunch in Jemison, Looney realized he was about to have a bowel movement and could not reach a restroom in time to prevent an accident. (*Id.*; Looney Dep. pp. 31-34). Looney testified that he was "always fearful" of developing an infection in a pressure sore and he worried that exposing the sore to fecal matter increased the risk of infection. (*Id.* pg. 40, 43). Because Looney and Cosby were still

---

The court notes that its ordinary preference is to cite to "Admitted Facts" stipulated by the parties to an action. In this case, the parties have not enumerated their statements of undisputed facts as required by this court's Uniform Initial Order, Appx. II (pg. 15 of 20). Accordingly, references to undisputed facts are made directly to the record and not to "Admitted Facts."

between thirty and forty minutes away from Looney's doctor, they began looking for a hotel where they could stop.[2]  (Looney Dep. pp. 33-34).

The first hotel they found was a Days Inn, owned and operated by Defendants and located near the interstate in Calera.  (*Id.*).  Looney noticed the hotel did not have a sign indicating "No Vacancy," and there were few cars in the hotel's parking lot. (*Id.* pp. 34-36).

The parties dispute the events that follow.  Looney alleges that both he and Cosby entered the hotel lobby and asked the desk clerk, a woman appearing in her mid-twenties, to rent a room.  (*Id.* pg. 36).  Looney then pulled out his wallet and told the desk clerk "I've had a problem, an accident, and I need to go to the bathroom. I've had a problem in my pants, I've gone to the bathroom; I need to clean up real quick; I've got a doctor's appointment.  And I've got my own cleaning supplies and everything here, I [ ] don't need anything.  I [ ] need a room, real quick." (*Id.* pg. 37).

The desk clerk stated she would speak to her manager, Dharmesh Patel ("Patel"), and left the front desk.  (*Id.*).  She returned shortly after with Patel, to whom Looney said "Sir, I need a room.  I've had a problem.  I need to get to Birmingham

---

[2]  Looney required a hotel room because he needed, with his attendant's assistance, to lay on a flat surface to clean himself and change his clothing.  (Looney Aff. pp. 1-2).  He always kept cleaning supplies and an extra set of clothes with him in the event such an accident occurred while he was traveling.  (Looney Dep. pg. 32).

real quick, I've had an accident in my pants."[3]  (*Id.* pg. 38).

According to Looney, Patel told him "I don't have a room for you."  (*Id.*). Looney and Cosby then left the hotel and returned to the interstate, where Looney traveled in considerable discomfort the rest of the way to his doctor appointment.[4] (*Id.*).  He cleaned himself and changed his clothes while at the doctor's office, and did not develop an infection to his pressure sore.  (*Id.* pg. 43).

## II.    PROCEDURAL HISTORY

Looney filed his Complaint in this action on October 13, 2006, alleging that Patel's refusal to rent him a room in his condition caused him considerable emotional distress, embarrassment, humiliation, and mental anguish.  He asserted claims under

---

[3]  Looney believed the hotel had vacant rooms available because, while speaking with the desk clerk and later with Patel, he saw several rooms with open doors and housekeeping employees cleaning them.  (Looney Dep pp. 35, 44).

He did not ask for a handicap-accessible room because he did not need one.  (*Id.* pg. 50).

[4]  Patel described a vastly different version of events.  He testified that after the desk clerk alerted him to Looney's request, he came into the lobby but only Cosby was there.  (Patel Dep. pg. 10).  According to Patel, he never saw Looney come into the hotel.  (*Id.*).  He spoke with Cosby, to whom he gave a key to a room that had been reserved for another customer and which Patel knew was clean when Cosby arrived.  (*Id.* pp. 23).  Patel testified that approximately ten to fifteen minutes later, Cosby returned to the hotel desk, took one of Patel's business cards and left again.  (*Id.* pg. 16).  Patel does not know whether Looney ever used the room he rented.  (*Id.* pg. 15).  It is not clear from Patel's testimony whether Cosby paid for the room or what happened to the room key Patel allegedly gave Cosby.  (*See* Patel Dep. pg. 16).

Because the court addresses Looney's claims on a motion for summary judgment, it accepts Looney's version of events.  *See Fitzpatrick*, 2 F.3d at 1115 (where the facts are in dispute, they are stated in the manner most favorable to the plaintiff).

4

the Americans with Disabilities Act, 42 U.S.C. § 12182 *et seq.* and Ala. Code § 21-7-3, as well as claims of negligence, negligence *per se*, gross negligence, wantonness, intentional infliction of emotional distress, and negligent failure to train and supervise. (Complaint, doc. 1). Defendants answered the Complaint on November 5, 2006, denying the material facts therein and asserting various affirmative defenses. (Answer, doc. 5).

Following the close of discovery, Defendants filed the pending motion for summary judgment on August 1, 2007 (doc. 12), to which Looney responded on September 11, 2007 (doc. 14). Defendants did not file a reply brief. The motion is now subject to the court's review.

## III.   STANDARD OF REVIEW

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes

5

demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. Once the moving party has met its burden, Rule 56(c) requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249; 106 S.Ct. at 2511.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17, citing *United States v. Four Parcels of*

*Real Property*, 941 F.2d 1428 (11th Cir. 1991) (*en banc*).  If the moving party bears the burden of proof at trial, then it can meet its burden on summary judgment only by presenting positive evidence that demonstrates the absence of a genuine issue of material fact; i.e., facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for a directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of any evidence in the record in support of a judgment for the nonmoving party on the issue in question.  This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to

7

point out to the court that there is an absence of evidence to support the nonmoving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the nonmoving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992).

## IV.   ANALYSIS

### 1.   ADA Discrimination

Looney first alleges that Defendants discriminated against him based on his disability in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*[5]

---

[5]  42 U.S.C. § 12182 provides, in relevant part, that

[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

To prevail on this claim, Looney must establish that (1) he has a disability, (2) Defendants' business is a place of public accommodation, and (3) he was subjected to discrimination by being refused full and equal enjoyment of the public accommodations at Defendants' place of business. *Green, et al., v. CLP Corp.*, 2:02-CV-1278-VEH (Memorandum Opinion, March 28, 2006) (doc. 67, pg. 43); *Access Now, Inc. v. South Florida Stadium Corp., et. al.*, 161 F.Supp.2d 1357, 1363 (S.D.Fla. 2001).

Defendants do not dispute that Looney has satisfied these elements of his claim. Instead, Defendants argue that Looney lacks standing to seek injunctive relief under the ADA because he has not alleged that (1) he suffered an injury in fact, (2) the injury was causally connected to Defendants' actions, and (3) the injury would be redressed by a judgment in Looney's favor. *See Lujan*, 504 U.S. at 560-61, 112 S.Ct. at 2136 (addressing these elements as the "irreducible constitutional minimum of standing" under Article III of the Constitution).[6]

---

[6] Looney's "injury in fact" must be "concrete and particularized," and "actual or imminent, not conjectural or hypothetical," "affec[ting] [Looney] in a personal and individual way." *Id.*, 504 U.S. at 560-61 n. 1, 112 S.Ct. at 2136; citing *Allen v. Wright*, 468 U.S. 737, 756, 104 S.Ct. 3315, 3327, 82 L.Ed.2d 556 (1984), *Warth v. Seldin*, 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975); *Sierra Club v. Morton*, 405 U.S. 727, 740-741, n. 16, 92 S.Ct. 1361, 1368-1369, n. 16, 31 L.Ed.2d 636 (1972) (internal quotations omitted). The causal connection between Looney's injury and Defendants' conduct must be "fairly . . . trace[able] to the challenged action of [Defendants], and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560, 112 S.Ct. at 2136. Finally, Looney must establish that it is "'likely,' as opposed to merely 'speculative,' that the injury will

The Court instructed in *Lujan* that

"'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" [*Los Angeles v.*] *Lyons*, 461 U.S. [95,] 102, 103 S.Ct. [1660,] 1665[, 75 L.Ed.2d 675 (1983),] (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-496, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974)).  And the affiants' profession of an "inten[t]" to return to the places they had visited before – where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species – is simply not enough.  Such "some day" intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the "actual or imminent" injury that our cases require.

504 U.S. at 564, 112 S.Ct. at 2138.

Looney argues that Defendants are attempting to challenge the court's subject matter jurisdiction by asserting that he lacks standing to bring his ADA claim.  *See Stalley ex rel. U.S. v. Orlando Regional Healthcare System, Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("'Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under FED.R.CIV.P. 12(b)(1)'"), quoting *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n. 42 (11th Cir.1991).

"A defendant may attack subject matter jurisdiction in two different ways –

---

be 'redressed by a favorable decision.'"  *Id.*, 504 U.S. at 561, 112 S.Ct. at 2136, quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976).

facially and factually." *McMaster v. U.S.*, 177 F.3d 936, 940 (11th Cir.1999), citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (*per curiam*). "'Facial attacks' on the complaint 'require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true . . . .'" 177 F.3d at 940 (citation omitted).   A factual attack on the court's subject matter jurisdiction "challenge[s] 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *McMaster*, 177 F.3d at 940, citing *Lawrence*, 919 F.2d at 1529 (citation omitted).

Looney avers that Defendants assert a facial attack on subject matter jurisdiction.  Either way, Looney's claim survives both a facial attack and a factual attack on the court's subject matter jurisdiction.  As to a facial attack, Defendants <u>argue</u> that Looney has not alleged that he has future, concrete plans to return to the Days Inn at Calera.  Defendants apparently fail to notice that Looney has clearly pleaded that he has such plans, that he desires to use the Days Inn several times each year, and that he would do so were it not for Defendants' unlawful conduct.  (Complaint, doc. 1, ¶ 30).  As Looney argues, the probability of future harm is "properly alleged [in his Complaint] and not contradicted" by Defendants – it is simply ignored.

11

As to a factual attack, Defendants point to pages 16 and 34 of Looney's deposition testimony to prove that Looney testified to having no plans to travel through Calera in the future that would necessitate his use of the Days Inn hotel at Calera.  It is true that, on page 16 of Looney's deposition transcript, Looney testified that he no longer seeks medical treatment in Birmingham and, therefore, he need not travel through Calera for that purpose.  However, the court has given multiple readings to the submitted portions of Looney's deposition testimony, including page 34 thereof, and finds no testimony by Looney that he does not plan to travel through Calera for <u>any</u> purpose.  The evidence cited to support Defendants' factual attack simply does not exist.[7]  Thus, Looney's claim also survives a factual attack on the

---

[7] Defendants also point to two district court cases involving similar facts where the courts concluded that a plaintiff lacked standing to bring ADA discrimination claims.  Both cases hinge on whether the plaintiff alleged a "real and immediate threat of future injury" to establish standing to seek injunctive relief under the ADA.  In *Lamb v. Charlotte County*, 429 F.Supp.2d 1302 (M.D.Fla. 2006), the plaintiff was a disabled individual who alleged that he was denied access to certain public buildings on the basis of his disability.  The court dismissed his claim for injunctive relief for lack of subject matter jurisdiction, reasoning that the plaintiff lacked standing because he did not allege a specific intent to return to the defendant's properties, and could not "credibly or sincerely" allege that he would suffer a future injury.  429 F.Supp.2d at 1310-11.  The court stated, without explaining, that the plaintiff expressed only a "nonspecific 'wish'" to return to the subject properties and that the plaintiff's statement of this wish was not credible given that he had already been involved in numerous – possibly more than 100 – other ADA lawsuits.  *Id.*

Similarly, in *Rosenkrantz v. Markopoulos*, 254 F.Supp.2d 1250 (M.D.Fla. 2003), the district court dismissed the plaintiff's claims for lack of subject matter jurisdiction due to the plaintiff's failure to establish standing to bring his ADA claim.  The plaintiff had failed to allege a real and immediate threat of future injury because, *inter alia*, he lived "hundreds of miles away" from the defendant's hotel, he traveled only twice annually, the defendant's hotel was not on a direct route that the plaintiff claimed to travel, his past excursions were "irregular, occasional, and

court's subject matter jurisdiction.

Based on the foregoing, the court is satisfied that Looney has established the elements of standing to assert his ADA discrimination claim.  Because Defendants do not dispute that Looney has presented a prima facie case, Defendants' motion for summary judgment on this claim is due to be **DENIED**.

### 2.     Alabama Code § 21-7-3

Looney also alleges that Defendants' conduct violated Alabama Code § 21-7-3, which provides that

> The blind, the visually handicapped and the otherwise physically disabled are entitled to full and equal accommodations, advantages, facilities and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motor buses, streetcars, boats or any other public conveyances or modes of transportation, hotels, lodging places, places of public accommodation, amusement or resort and other places to which the general public is invited, subject only to the conditions and limitations established by law and applicable alike to all persons.

---

infrequent," and his future travel plans were "just 'someday' intentions," lacking "anything more definite than that he will travel to the Tampa Bay area in the next year or two probably."  254 F.Supp.2d at 1253.

Both *Lamb* and *Rozencrantz* appear, on their faces, to be factually similar to this case, but this court finds them distinguishable such that the same outcome is not appropriate here.  As explained *supra*, Looney has expressed concrete plans to travel through Calera and stay at Defendants' hotel four times per year to visit relatives who live in Birmingham and Alabaster. (Complaint, doc. 1, ¶ 30; Looney Dep. pg. 14).  He does not live "hundreds of miles" away from the Days Inn hotel in Calera (Complaint, doc. 1, ¶ 3), which is directly on the route Looney would take between his home and Birmingham.  (Id. ¶¶ 16-17).  Accordingly, the court is not persuaded by either *Lamb* or *Rozencrantz* that Looney lacks standing to pursue injunctive relief against Defendants.

Defendants do not dispute that their conduct violated § 21-7-3.  They respond that violation of § 21-7-3 constitutes a misdemeanor, but does not form the basis of a civil cause of action and, therefore, Looney's claim for damages under this provision cannot lie.

Upon considering a similar claim brought by the plaintiff in *Hardesty*, the district court there agreed and dismissed the claim for this reason.  However, conduct that violates § 21-7-3 may form the basis of a civil cause of action, such as negligence or wantonness.  *See Martinson v. Cagle*, 454 So.2d 1383, 1385 (Ala. 1984) ("[t]he rule can be more properly stated as follows:  Even though an act may constitute a crime, if it also results in injury to the person or property of another, the act may still be the basis of a civil action for damages").  This rule is not absolute, however, but requires that "the acts complained of [ ] violate the legal rights of the plaintiff, constitute a breach of duty owed to the plaintiff, or constitute some cause of action for which relief may be granted."  *Id.*

Looney argues that this is the case here, as he alleges in his Complaint that Defendants' actions both violated Alabama Code § 21-7-3 and constitute a breach of a legal duty owed to him by Defendants.  (*See* Complaint, doc. 1, ¶¶ 45-48).

To explain this duty, Looney cites to *Dixon v. Hotel Tutwiler Operating Co.*, 108 So. 26 (1914), in which the Alabama Supreme Court instructed that

14

> [o]ne of the things which a guest for hire at a public inn has the right to insist upon is respectful and decent treatment at the hands of the innkeeper and his servants.  [ ]  This right of the guest necessarily implies an obligation on the part of the innkeeper that neither he nor his servants will abuse or insult the guest or indulge in any conduct or speech that may unnecessarily bring upon him physical discomfort or distress of mind.

108 So. at 28.

According to Looney, the breach of this duty forms the basis of his claims for negligence and wantonness.  (*See Id.*, ¶ 45).

Looney's point is well taken; however, the district court concluded in *Hardesty* that

> [c]ertainly, to the extent that the circumstances that constitute a misdemeanor in this case also constitute a legitimate civil cause of action, such as a claim under the ADA for violation of the legal rights of the Plaintiff or a claim of negligence or wantonness for breach of a duty owed to the Plaintiffs, that claim may continue.  However, Plaintiffs may not maintain a <u>separate or additional cause of action</u> <u>under</u> Ala. Code §§ 21-7-3 through 21-7-5 or § 3-1-7.

391 F.Supp.2d at 1071 (emphasis added).

Accordingly, even if Defendants' alleged violation of Alabama Code § 21-7-3 also forms the basis of a civil cause of action, such as negligence and/or wantonness (as alleged by Looney), the court is persuaded that Looney may not pursue these claims under Alabama Code § 21-7-3, <u>in addition to</u> pursuing them separately in Counts III and IV of his Complaint (asserting claims for negligence and wantonness,

15

respectively).  Consequently, Defendants' motion for summary judgment on this claim is due to be **GRANTED**.

### 3.    Remaining State Law Claims

Looney also asserts the following claims under Alabama law:  (1) negligence, negligence *per se*, and gross negligence; (2) wantonness; (3) intentional infliction of emotional distress; and (4) negligent training and supervision.

### A.    Negligence[8]

As stated *supra*, Looney alleges that Defendants owed him a legal duty to accommodate him and to take reasonable care not to injure him.  (Complaint, doc. 1, ¶ 49).  By refusing to rent him a room, Looney asserts that Defendants breached that duty, thereby placing him in a zone of danger of infection and other, unspecified "medical complications."  (*Id.* ¶¶ 50-51).

Defendants do not dispute that they owed Looney a duty or that they breached that duty by refusing to rent him a room.  They argue that, because Looney does not

---

[8]  Looney alleges in his Complaint that, because Defendants committed a misdemeanor by refusing to accommodate him, they are liable to him for negligence *per se*.  Neither party addresses this claim on summary judgment.  Grounds alleged in the Complaint but not relied upon on summary judgment are deemed abandoned.  *See cf., Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).  Accordingly, the motion for summary judgment on this claim is due to be **GRANTED**.

Additionally, the court acknowledges that Looney has expressly abandoned his claim for negligent training and supervision.  Therefore, the motion for summary judgment on this claim is also due to be **GRANTED**.

16

allege that he suffered a physical injury, he cannot recover on his negligence claim.

It is true that Alabama historically required a physical injury before a plaintiff could recover for mental anguish based on the defendant's negligent conduct. However, in *Taylor v. Baptist Medical Center, Inc*., 400 So.2d 369 (Ala. 1981), the Alabama Supreme Court abandoned that rule as "an adherence to procrustrean principles that have little or no resemblance to medical realities."  400 So.2d at 374. Alabama courts have since applied the "zone of danger" test to negligence claims, which requires that plaintiffs allege <u>either</u> a physical injury as a result of the defendant's misconduct, <u>or</u> that they were placed in a "zone of danger" of physical injury thereby.  *See AALAR, Ltd., Inc. v. Francis*, 716 So.2d 1141 (Ala. 1998); *Ex parte Grand Manor, Inc*., 778 So.2d 173 (Ala. 2000); *Wal-Mart Stores, Inc. v. Bowers*, 752 So.2d 1201 (Ala. 1999); *White Consolidated Industries, Inc. v. Wilkerson*, 737 So.2d 447 (Ala. 1999); *City of Mobile v. Lester*, 804 So.2d 220 (Ala.Civ.App. 2001); *City of Mobile v. Taylor*, 938 So.2d 407 (Ala.Civ.App. 2005); *Hardesty*, 391 F.Supp.2d at 1073 n. 1).[9]

---

[9]  Looney cites to *George H. Lanier Memorial Hospital v. Andrews*, 2004 WL 2634298 (Ala. 2004) and *Webb Wheel Products, Inc. v. Hanvey*, 2004 WL 3016999 (Ala. 2004), for the proposition that he may recover in negligence for mental anguish, without applying the "zone of danger" test.  *Webb* is inapposite, as it addresses a claim for damages for mental anguish for retaliatory discharge, not negligence.

*Lanier* apparently supports Looney's argument, holding that parents could recover in negligence for mental anguish based on a hospital's harvesting of a dead child's corneas without the parents'

In applying the zone of danger test to Looney's claim, there is no dispute that, by turning him out of their hotel without affording him the opportunity to clean himself and change his clothes, Defendants' conduct placed Looney in the zone of danger of physical harm.  Although he did not actually suffer a physical injury, Looney's testimony – which is not disputed by Defendants – suggests that he was placed at increased risk of infection by sitting in his own feces for approximately thirty minutes while suffering from a pressure sore that was located in the same area where his accident occurred.  Looney likened the experience to "ha[ving] an open wound and pour[ing] salt in it," and testified that he is "always fearful" of getting an infection when he has a pressure sore, which he must "keep [ ] clean all the time." (Looney Dep. pp. 41, 43).

While the court is satisfied that the risk of infection increased following Defendants' refusal to rent Looney a room, this does not automatically lead to the conclusion that Looney may recover damages for mental anguish as a result.  The

---

express permission.  *Lanier* did not involve a claim of physical injury or threat thereof, and the court there did not address the zone of danger test to the plaintiffs' negligence claim.  However, as the district court observed in *Hardesty*, *Lanier* is the minority position in Alabama, as its holding is far outweighed by the cases cited *supra*.  These cases uniformly require that, to recover in negligence for mental anguish, a plaintiff must, at a minimum, allege that he suffered a physical injury as a result of the defendant's conduct or was threatened with physical injury thereby.  Having reviewed these cases, this court is persuaded by the reasoning of the district court in *Hardesty* that *AALAR, Grand Manor*, *Lester*, and *Taylor* express the majority position in Alabama and are to be followed in their application of the zone of danger test to negligence claims.

Alabama Supreme Court has instructed that, to recover for mental anguish, a plaintiff must also prove that a reasonable person could conclude that the defendant could have foreseen that its conduct would cause the plaintiff to be at risk of physical injury.[10]  *City of Mobile*, 938 So.2d at 411; *Grand Manor*, 778 So.2d at 179; *AALAR*, 716 So.2d at 1147.

Neither party addresses whether Defendants could have foreseen the increased risk of infection to Looney as a result of their refusal to rent him a room.  Upon careful consideration of the record, the court finds no evidence that Defendants could have foreseen the potential that Looney would be physically harmed by their refusal to rent him a room.  Viewing the facts in the light most favorable to Looney, it is clear that Patel knew Looney was disabled, and that he needed to rent a room for the express purpose of cleaning himself, but there is no evidence that Defendants could reasonably have foreseen that disallowing Looney to clean himself in a hotel room would place him at increased risk of infection to a pressure sore that there is no evidence Defendants even knew Looney had.  Therefore, the court finds no genuine issue of material fact as to whether Defendants' conduct constitutes negligence under Alabama law.  The motion for summary judgment is due to be **GRANTED** on this

---

[10]  A plaintiff must also prove that he actually suffered mental anguish as a result of the defendant's conduct.  *City of Mobile*, 938 So.2d at 411; *Grand Manor*, 778 So.2d at 179; *AALAR*, 716 So.2d at 1147.  Because this element is not in dispute, the court does not address it.

claim.

### B.    Wantonness

Looney also alleges that Defendants intentionally acted with a reckless or conscious disregard of his rights and safety, and that such conduct was substantially certain to cause damage to him.  (Complaint, doc. 1, ¶¶ 54-55).

> " 'The [Alabama] Legislature has defined "wantonness" as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others."  Alabama Code 1975, § 6-11-20(b)(3).' *Hobart Corp. v. Scoggins*, 776 So.2d 56, 58 (Ala. 2000). 'Wantonness involves the "conscious doing of some act or the omission of some duty, while *knowing* of the existing conditions and *being conscious* that, from doing or omitting to do an act, injury will likely or probably result."' *Id.* (quoting *Alfa Mut. Ins. Co. v. Roush*, 723 So.2d 1250, 1256 (Ala.1998)) (emphasis added in *Scoggins*). Thus, '[t]he "knowledge" of the defendant is "the *sine qua non* of wantonness."' *Norris v. City of Montgomery*, 821 So.2d 149, 156 n. 9 (Ala.2001) (quoting *Ricketts v. Norfolk Southern Ry.*, 686 So.2d 1100, 1106 (Ala.1996))." *Ammons v. Tesker Mfg. Corp.*, 853 So.2d 210, 213 (Ala.2002).

*Southeast Environmental Infrastructure, L.L.C. v. Larry Rivers, et al.,* 2008 WL 2554382 (Ala. 2008).

To support this claim, Looney argues that Defendants knew he was disabled and that he could not be denied accommodations on that basis.  In short, Looney avers, "it don't get much more wanton than that."  (Looney Opp. Br. at 9).

While the court is certainly mindful of Looney's alleged injury, it cannot agree that Defendants' conduct satisfies <u>all</u> the requirements of wantonness under Alabama

20

law.  As stated above, wanton conduct involves knowledge by the Defendants of the existing conditions and consciousness that such conduct would likely result in injury to Looney.  As the court concluded with regard to Looney's negligence claim, there is no evidence or even argument by Looney that Defendants were aware of <u>all</u> existing conditions when they refused to rent Looney a room.  While it is true that Patel understood Looney to be disabled and in need of a room, the court will not assume that Patel knew his conduct could cause Looney to develop an infection. With no evidence to support this element of Looney's claim, the motion for summary judgment on this claim is due to be **GRANTED**.

### 4.   Intentional Infliction of Emotional Distress

Looney finally asserts a claim of intentional infliction of emotional distress, alleging that Defendants' conduct was intentional, extreme and outrageous, and that it caused Looney severe emotional distress.

Consistent with other courts in this state, this court has repeatedly held that a claim of intentional infliction of emotional distress is analogous to a claim of outrage, which has been recognized by the Alabama Supreme Court in only three contexts: (1) wrongful conduct in family burials, *see Whitt v. Hulsey*, 519 So.2d 901 (Ala. 1987), (2) heavy-handed, barbaric means by insurance agents in attempting to coerce an insured into settling an insurance claim, *see Nat'l Sec. Fire & Cas. Co. v. Bowen*, 447

So.2d 133 (Ala. 1983), and (3) egregious sexual harassment, *see Busby v. Truswal Sys. Corp.*, 551 So.2d 322 (Ala. 1989).

Looney acknowledges that the range of conduct that qualifies him to recover for intentional infliction of emotional distress is limited in Alabama. He argues that Defendants' conduct here is sufficiently egregious that it should be included by the court as an additional basis to assert this claim.

The court disagrees. While it may be true that the range of specific conduct upon which claims of outrage have been upheld by Alabama courts is not exhaustive, it is clear that the facts alleged in this action do not rise to the level of atrocity as those alleged in the cases cited *supra*. For example, in *Bowen*, the following facts were deemed "sufficient" to support the plaintiff's outrage claim: (1) the defendants' obtaining through bribery and extortion false evidence to support criminal charges against the plaintiff; (2) threats by the defendants to kill the plaintiff's two small children and to cut the children's arms off; and (3) kidnaping the plaintiff, driving him into the woods, and forcing him to lie on the ground while holding a gun to his head and repeatedly snapping the hammer for an hour and a half before the plaintiff finally escaped – all for the purpose of forcing the plaintiff to settle an insurance claim. 447 So.2d at 137. In *Whitt*, the defendant's alleged destruction and desecration of the plaintiffs' century-old family cemetery was considered extreme

enough, in light of the "[g]reat respect [that] is afforded the resting place of the dead," to constitute outrageous conduct.  519 So.2d at 905-06.  Finally, in *Busby*, female employees were entitled to recover for outrage based on multiple allegations of extreme sexual harassment by their supervisor.  551 So.2d at 324.

The Alabama Supreme Court has generally instructed that claims of outrage are supported by allegations that

> one who by conduct so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society, intentionally or recklessly causes another person emotional distress so severe that no reasonable person could be expected to endure it [.]

*Bowen*, 447 So.2d at 141.

While the court has no intention of making light of Looney's distress, it is clear that, when compared with the facts alleged in *Bowen*, *Whitt*, and *Busby*, the facts alleged here do not rise to the level of extreme and atrocious conduct that has been found to support a claim of outrage in Alabama.  Accordingly, the motion for summary judgment is due to be **GRANTED** on this claim.

## V.    CONCLUSION

Having considered the evidence of record and the arguments of both parties to this action, the court finds that the motion for summary judgment is due to be **DENIED** as to Sherman Looney's claim of disability discrimination under Title III

of the Americans with Disabilities Act, 42 U.S.C. § 12182 *et seq.*, and otherwise

**GRANTED**.  A separate Order will be entered.

      **DONE** this the 17th day of July, 2008.

**VIRGINIA EMERSON HOPKINS**
United States District Judge